NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 22, 2007
Decided March 1, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-2985

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　*Plaintiff-Appellee,*<br><br>　　　*v.*<br><br>CORTNEY HALL,<br>　　　　*Defendant-Appellant.* | Appeal from the United States<br>District Court for the Northern<br>District of Illinois, Western Division<br><br>No. 05 CR 50030-2<br><br>Philip G. Reinhard,<br>*Judge.* |

**O R D E R**

Cortney Hall pleaded guilty to robbing a bank with two of his associates. 18 U.S.C. § 2113(a). The Presentence Investigation Report ("PSR") recommended increasing his sentence by two levels for using a minor to commit the crime. U.S.S.G. § 3B1.4. Over Hall's objection, the district court applied the enhancement and sentenced him to 102 months' imprisonment. On appeal Hall argues that he did not affirmatively act to involve the minor and thus should not have received the enhancement. For the reasons that follow, we affirm.

The bank robbery at issue in this appeal has already been the subject of a recently published decision concerning Hall's co-defendant, Keith Brazinskas. *See*

*United States v. Brazinskas*, 458 F.3d 666 (7th Cir. 2006).  In that case, we upheld a two-level enhancement to Brazinskas's base offense level for use of a minor to commit the offense.

In March 2005 Hall, Brazinskas, and Robert Eviston agreed to rob a bank in Rockford, Illinois.  In the week preceding the robbery, Eviston lived at Hall's house with Kassandra Guevara, who was fifteen years old at the time.  Hall and Eviston discussed the execution of the robbery in her presence.  Eviston asked Guevara to aid them in the robbery by sitting in the getaway car with him so that he would look less suspicious waiting outside of the bank.  According to Eviston, "Cassandra [sic] knew what was going on and she was with me because we thought if a guy and girl were together it would look good as we drove away."

On the day of the robbery, Hall remained at home, while Eviston and Guevara drove Brazinskas to the bank.  When they arrived, Brazinskas entered, pointed a pellet gun at the bank teller's face, handed her a plastic bag, and ordered her to fill it.  After the teller did so, Brazinskas ran back to the car, where Eviston and Guevara were waiting, and the trio sped off.  What Brazinskas did not realize was that the teller had placed an explosive dye pack in the bag.  The dye pack exploded, staining the money with red ink.  After disposing of the bag, Eviston, Guevara, and Brazinskas took the stained money to Hall's house, where Guevara and the conspirators tried to remove the dye stains from the money.  Hall apparently had other house guests, so Guevara was responsible for guarding the money when Hall and his coconspirators were not around.  Once they finished cleaning the money, Hall, Eviston, and Brazinskas each took a portion and then buried the rest in Hall's backyard.

Police arrested Hall the following day.  He was charged with robbing a bank in violation of 18 U.S.C. § 2113(a).  He eventually pleaded guilty to the charge, but objected, among other things, to the PSR's suggested enhancement under U.S.S.G. § 3B1.4 for use of a minor.  After noting that Hall and Eviston discussed the bank robbery in Guevara's presence, the district court found that Hall knew Guevara would be there and that he affirmatively planned the robbery with her involvement.

On appeal Hall argues that the district court improperly applied the enhancement under U.S.S.G. § 3B1.4 for use of a minor because the record does not show that he took affirmative actions to involve Guevara in the robbery.  That guideline requires a two-level increase in offense level where the defendant "used" or "attempted to use" a person under eighteen to commit the offense or assist in avoiding detection of the offense.  The application notes explain that the phrase "used or attempted to use" includes actions like "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting."

U.S.S.G. § 3B1.4 n.1. We review sentences imposed by the district court for reasonableness. *See Brazinskas*, 458 F.3d at 667-68. We review the factual findings that the district court made in calculating the advisory guidelines range for clear error and review the district court's interpretation of the guidelines de novo. *See id.*

At oral argument, Hall relied heavily on our recent pronouncement regarding a defendant's "use" of a minor, *United States v. Acosta*, 474 F.3d 999 (7th Cir. 2007), where we clarified that the word "use" in the guideline requires a showing of some affirmative act by the defendant beyond mere knowledge of participation by the minor in the criminal activity. That case, however, is distinguishable. Whereas in *Acosta* there was virtually no evidence of the defendant's personal involvement with the minors, *see id.* at 1000-01, here the record shows that Hall allowed Guevara to reside with him for the entire week before the robbery; that Hall and Eviston hatched the scheme in her presence; and that Hall participated with her in cleaning, counting, and guarding the money. Given this evidence, we conclude that the district court's finding that Hall affirmatively used a minor in committing the crime was not clearly erroneous.

AFFIRMED.